UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ESTATE OF MIKAL R. GAITHER,
by and through Pearl Gaither, Personal
Representative,

    Plaintiff,

      v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 03-1458 (CKK)

---

**MEMORANDUM OPINION**
(December 2, 2005)

Presently before the Court is [14] Plaintiff's Motion to Lift the Stay in the above-captioned case, and [18] Plaintiff's Supplemental Motion to Lift the Stay.  Upon a consideration of Plaintiff's motions, the record adduced by the parties as to the events surrounding this case, and a searching examination of the relevant case law, the Court shall exercise its discretion, deny both of Plaintiff's motions, and maintain the discovery stay in this case until the completion of criminal proceedings relevant to the events surrounding Plaintiff's claims.

**I: BACKGROUND**

Plaintiff Pearl Gaither, mother and personal representative of the Estate of Mikal R. Gaither, filed a Complaint in the above-captioned action on July 1, 2003, against Defendants the District of Columbia; Odie Washington, Director of the D.C. Department of Corrections; Marvin L. Brown, Warden of the D.C. Jail; and Dennis Harrison, Associate Warden of Operations of the D.C. Jail.  *See* Compl. at 1.  In its amended form, Plaintiff's Complaint seeks compensation from Defendants for the stabbing death of her son, Mikal R. Gaither, which occurred while he was in

the custody of the D.C. Jail.  Plaintiff's Amended Complaint brings claims for negligence (Count I), wrongful death (Count II), and violation of constitutional rights pursuant to Title 42 U.S.C. § 1983 (Count III).  *See generally* Am. Compl.

Before the commencement of discovery in this case, Defendants moved – with Plaintiff's consent – to stay further proceedings in this case "until completion of the related criminal case."  *See* Defs.' Mot. for Stay at 1.  On October 8, 2003, the Court granted Defendants' motion, staying this case "until further notice from the parties."  *See Gaither v. Dist. of Columbia*, Civ. No. 03-1458 (D.D.C. Oct. 8, 2003) (Minute Order).  Having heard nothing from the parties for nearly two years, the Court on July 11, 2005 ordered "that the parties in the above-captioned action are to provide the Court with a Status Report regarding the progress of this case by Monday, August 8, 2005, including a projection of the proper time to lift the 'stay' in this case." *Gaither*, Civ. No. 03-1458 (D.D.C. July 11, 2005) (Minute Order).

The Court's July 11, 2005 Order generated an unexpected flurry of filings by the parties: specifically, Plaintiff's Status Report and Motion to Lift the Stay, Defendants' Opposition, Plaintiff's Supplemental Motion to Lift the Stay, and Defendant's Supplemental Opposition.  In short, the Court was initially informed that a criminal trial related to this case was scheduled in D.C. Superior Court for November 7, 2005.  *See* Defs.' Status Rep. at 2; Pl.'s Mot. to Lift Stay at 5.  In this criminal trial, the Government is bringing murder charges against criminal defendants Matthew Ingram and Delonte Kent, alleging that they stabbed Plaintiff's decedent to prevent him from giving testimony against them in their criminal trials.  *See* Defs.' Status Rep. at 2. However, the criminal trial of Messrs. Ingram and Kent has now been continued to February 13, 2006.  *See* Pl.'s Suppl. Mot. to Lift Stay at 1; Defs.' Suppl. Opp'n at 1.

Due to the lengthy passage of time since the initial stay in this case, Plaintiff withdraws her consent to the stay and now requests that the Court lift the previously agreed-to stay on discovery.  *See* Pl.'s Mot. to Lift Stay at 3.  The only justification offered by Plaintiff for the lifting of the stay so that discovery may commence in this action is her assertion that "[e]ach day the stay on discovery remains in effect increases the risk to plaintiff of memories clouding and documents being lost that would show the District's negligence in connection with Mikal Gaither's 2002 death."  Pl.'s Suppl. Mot. to Lift Stay at 2.

Defendants oppose Plaintiff's motion on multiple grounds:  (1) the U.S. Attorney will be calling multiple inmates as witnesses in the relevant criminal case, and lifting the stay on discovery in this case before the trial is completed could lead to the disclosure of the government witnesses' identities and possible retaliation against them in an effort to block their testimony, Defs.' Status Rep. at 2; (2) the transcript obtained from the criminal trial might resolve many of the issues that would otherwise be a focal point during discovery in this case, saving time, effort, and money in the eventual discovery process, and possibly speeding up Plaintiff's ultimate recovery in this case, Defs.,' Suppl. Opp'n at 2; (3) discovery in this case would have an adverse impact on the criminal trial and possibly injure the integrity of murder prosecutions by complicating the tasks of the U.S. Attorney and forcing likely witnesses to give detailed depositions in a civil case before issues of criminal liability are resolved, *id.* at 1-2; (4) Gina Powell, the homicide detective assigned to the case, indicated that the commencement of discovery would be disruptive and not particularly effective, as "[a]ll or large parts" of the physical evidence or MPD files "would likely be protected by the investigatory privilege," Defs.' Status Rep. at 2; and (5) the wait of three additional months – until February 2006 – is "not too

3

long to wait to advance the interests of [a] fair trial," Defs.' Suppl. Opp'n at 1.

In response, Plaintiff argues that the kind of blanket stay of discovery effectuated by consent on October 8, 2003, is now unjustified, as many of Defendants' arguments are inapplicable. *See* Pl.'s Mot. to Lift Stay at 3-5. Specifically, Plaintiff contends that (1) only a tiny fraction of the evidence that Plaintiff will seek in discovery would "touch on the limited materials the District wishes to protect," Pl.'s Mot. to Lift Stay at 3; (2) Defendants would not likely satisfy the required elements to establish protection pursuant to investigative privilege, *id.* at 4; (3) discovery could proceed on grounds far removed from those that would otherwise implicate witnesses in the criminal trial until the completion of the trial, *id.* at 4-5; and (4) it is possible that the criminal trial could be postponed rather than proceeding on February 13, 2006 as currently scheduled, Pl.'s Suppl. Mot. to Lift Stay at 1-2.

## II: DISCUSSION

It is well-established that a district court has discretionary authority to stay a civil proceeding pending the outcome of a parallel criminal case when the interests of justice so require. *See United States v. Kordel*, 397 U.S. 1, 12 n.27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). This authority allows a court to "stay civil proceedings, postpone civil discovery or impose protective orders and conditions when the interests of justice seem to require such action." *Sec. & Exchange Comm'n v. Dresser Indus. Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure

16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice

the criminal case.  *Id.* at 1376.

However, "[n]othing in the Constitution or the laws requires a stay of civil proceedings

pending the outcome of parallel criminal proceedings."  *Barry Farm Resident Council, Inc. v.*

*U.S. Dep't of the Navy*, Civ. Nos. 96-1450, 96-1700 (HHG), 1997 WL 118412, at *1 (D.D.C.

Feb. 18, 1997) (citing *Dresser Indus.*, 628 F.2d at 1375).  As the D.C. Circuit recognized in

*Dresser*,

> The civil and regulatory laws of the United States frequently overlap with the
> criminal laws, creating the possibility of parallel civil and criminal proceedings,
> either successive or simultaneous.  In the absence of substantial prejudice to the
> rights of the parties involved, such parallel proceedings are unobjectionable under
> our jurisprudence.

*Dresser Indus.*, 628 F.2d at 1374.  Importantly, "[t]he case for staying civil proceedings is 'a far

weaker one' when 'no indictment has been returned.'" *FSLIC v. Molinaro*, 889 F.2d 899, 903

(9th Cir. 1989) (quoting *Dresser Indus.*, 628 F.2d at 1376).

In determining whether to stay a civil proceeding pending the outcome of a related

criminal proceeding, courts within this Circuit have customarily weighed the following factors:

(1) the interests of the plaintiff in proceeding with the civil litigation as balanced against the

prejudice to them if it is delayed; (2) the public interest in the pending civil and criminal

investigation; (3) the interests of and burdens on the defendant; (4) the interest of persons not

parties to the civil litigation; and (5) the convenience of the court in the management of its cases

and the efficient use of judicial resources.  *Barry Farm Resident Council*, 1997 WL 118412, at

*1 (citing cases).  "The court must make such determinations in the light of the particular

circumstances of the case."  *Dresser Indus.*, 628 F.2d at 1375; *see also Capital Eng'g & Mfg. Co.*

*v. Weinberger*, 695 F. Supp. 36, 41-42 (D.D.C. 1988) ("the court must determine the extent to which the civil discovery threatens the secrecy and integrity of criminal proceedings, and, if the discovery could prove meddlesome, whether to stay discovery entirely or to narrow the range of discovery so as not to impinge upon the criminal proceedings").

Upon a consideration of the relevant factors, the Court – in exercising its discretion – concludes that the present discovery stay in this case should *not* be lifted, and therefore shall deny Plaintiff's motions seeking such an action.  Such a conclusion is based upon the following reasoning:

      1.    <u>Plaintiff's Interest</u>

Both Plaintiff's Motion to Lift the Stay and Plaintiff's Supplemental Motion rely on essentially one major argument:  Plaintiff's efforts at recovery in this civil suit will be injured because "[e]ach day that the stay on discovery remains in effect increases the risk to plaintiff of memories clouding and documents being lost that would show the District's negligence in connection with Mikal Gaither's 2002 death."  Pl.'s Suppl. Mot. to Lift Stay at 2.  While Plaintiff certainly has an interest in the "expeditious resolution" of her civil case, the Court finds that Plaintiff's interest in this case is not as great as it could otherwise be.

First, unlike the situation outlined in *Dresser Industries*, there has been an indictment secured against criminal defendants Ingram and Kent, making the case for a stay a stronger one than had that not been the case.  *See Dresser Indus.*, 628 F.2d at 1376.  Second, Plaintiff's decedent, Mikal Gaither, was murdered on December 15, 2002.  *See* Am. Compl. ¶ 7.  Plaintiff did not bring an action seeking recovery for his death until roughly seven (7) months later, on July 1, 2003.  *See* Compl. at 1.  Discovery in Plaintiff's case was stayed by Plaintiff's own

6

consent on October 8, 2003, and the agreed-upon stay has remained in place for roughly twenty-eight (28) months.  As such, at this point, nearly three (3) full years have passed since the date of Mikal Gaither's death.  With a criminal trial relating to Mr. Gaither's death scheduled in Superior Court for February 13, 2006, only three (3) months remain until the likely commencement and conclusion of that related case.  Certainly, a delay of only three (3) additional months, when roughly thirty-five (35) months have already passed, is relatively insignificant, especially if dimming memories are considered.  Third, as noted by various courts and focused upon by Defendants, a stay of discovery in a civil case until the resolution of a criminal case may well later streamline discovery in the civil case, rebounding to a plaintiff's benefit.  *See, e.g.*, *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 9 (D.Conn. 2002); *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995); *Rosenthal v. Giuliani*, Civ. No. 98-8408 (SWK), 2001 WL 121944 (S.D.N.Y. Feb. 9, 2001).  Such streamlining is likely to be the case here, as the transcript of the criminal trial may well resolve many of the instant discovery issues in this case.  Indeed, the trial may establish, *inter alia*, a motive for Mr. Gaither's killers, the weapon(s) used, the circumstances of his death, and the supervision by Defendants afforded both to Mr. Gaither and his killers.  In its own way, the criminal trial itself – by placing a wide range of testimony relevant to this case under oath – will actually preserve testimony and prevent memories from clouding, thereby obviating or allaying the central concerns of Plaintiff.

Based upon these considerations, the Court concludes that Plaintiff's interest in lifting the present discovery staff and commencing some form of discovery in this case prior to the resolution of the scheduled criminal trial is not particularly strong.

7

2.      The Public Interest

The public interest favors Defendants for one central reason:  discovery in this civil case

could impact the criminal case to a significant degree.  Discovery here could possibly implicate

the Fifth Amendment rights of Ingram and Kent, reveal confidential sources and endanger

witnesses for the anticipated criminal trial, and divert the attention of the Government and its

officers from the preparation of the criminal case.  Moreover, starting discovery in this case

might unintentionally aid the indicted criminal defendants, who could obtain more information

through civil discovery than they are entitled to under the criminal rules of discovery.  *See*

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) ("Allowing

civil discovery to proceed . . . may afford defendants an opportunity to which they are not entitled

under the governing criminal discvoery rules.").  Ultimately, "[t]he public has an interest in

ensuring that the criminal discovery process is not subverted."  *Rosenthal*, 2001 WL 121944, at

*2.

While Plaintiff suggests that these problems could be worked around and discovery

limited, courts have traditionally rejected similar arguments.  For instance, the *Bridgeport*

*Harbour* court found that:

> During oral argument, the plaintiff suggested that the more appropriate course of
> action would be to deny the motion to stay, allow the government to 'monitor'
> discovery and have the court issue specific sealing and protective orders.  The
> court is concerned, however, that such a compromise could force the government
> to become proactive in objecting to specific discovery requests and thereby
> inadvertently be forced to reveal some aspect about its case prematurely.  Further,
> plaintiff's recommendation would likely require further judicial intervention.
> Under such circumstances, the court finds that a complete stay of discovery offers
> "a more efficient" resolution.

*Bridgeport Harbour Place I, LLC*, 269 F. Supp. 2d at 11.  Accordingly, the Court finds that the

8

public interests favors a continued and complete discovery stay in this civil action.

> 3.     Interests of/Burden on Defendants

As noted previously, Defendants would be significantly burdened by the lifting on the present stay and the commencement of discovery in this case.  Importantly, discovery in this case before the criminal trial is completed could lead to the disclosure of the government witnesses' identities and possible retaliation against them in an effort to block their testimony.  Moreover, discovery in this case could have an adverse impact on the criminal trial and possibly injure the integrity of murder prosecutions by complicating the tasks of the U.S. Attorney and forcing likely witnesses to give detailed depositions in a civil case before issues of criminal liability are resolved.  Likewise, the already-apparent divergence in opinion between Plaintiff and Defendants as to the scope of discovery makes it clear that the lifting of the present stay would create a flood of privilege-related litigation, drawing resources away from the effort in prosecuting the related criminal case.

> 4.     Interests of Persons Not Parties to This Litigation

Given the circumstances of this case, the interests of persons not parties to this litigation favors continuation of the present stay.  First, the possible Fifth Amendment implications for criminal defendants Ingram and Kent should they be deposed in this case prior to their trial weighs in favor of a continued stay.  Second, as previously mentioned, the danger to confidential Government witnesses who may be called to testify in the forthcoming criminal trial also argues in favor of a denial of Plaintiff's twin motions.

> 5.     Convenience of the Court and Judicial Economy

While not as significant as some of the other factors, the Court has an interest in

preventing unnecessary conflict and litigation that may otherwise cloud its docket and hamper judicial economy.  Here, it is clear that overturning the present stay and allowing discovery in this case at this point in time would – in all likelihood – result in a significant amount of discovery-related litigation relating to motions for protective orders, claims of privilege, and conflicts over witness availability.  Such litigation might well prove wholly duplicative and unnecessary if the present stay was continued through the conclusion of the related criminal trial. Accordingly, judicial economy and the convenience of the court weighs in favor of maintaining the present stay in order to head off possibly unneeded and divisive litigation.

### III: CONCLUSION

For the reasons set forth above, the Court exercises its discretion and concludes that Defendants have shown "good cause" for maintaining the present discovery stay in this civil case until the conclusion of the related criminal case in Superior Court.  Plaintiff's slight interest in commencing civil discovery is significantly outweighed by other relevant interests.  Like the *Bridgeport Harbour* court, the Court finds that only a blanket discovery stay would supply the necessary protections required to ensure that justice occurs.  Moreover, in its own way, the criminal trial itself will cement relevant testimony provided under oath, preventing the kind of potential memory clouding which so concerns Plaintiff.  Accordingly, the Court shall deny Plaintiff's motions to lift the discovery stay, and shall direct that the parties file a joint status

report by Tuesday, February 28, 2006 updating the Court as to the progress of the pending

criminal case.  An Order accompanies this Memorandum Opinion.


Date:   December 2, 2005


                                          _____/s/_____
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge