UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF MIKAL R. GAITHER, by and through Pearl Gaither, Personal Representative,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>Defendants. | Civil Action No. 03-1458 (CKK) |

**MEMORANDUM OPINION**
(September 8, 2009)

The above-captioned matter was filed by Plaintiff Pearl Gaither as mother and personal representative of the Estate of Mikal R. Gaither, who was fatally stabbed on December 14, 2002, while incarcerated at the District of Columbia Central Detention Facility ("CDF" or the "Jail"). Plaintiff named as Defendants in this civil matter the District of Columbia ("D.C." or the "District") as well as several individual District officials and Jail employees—including, as is relevant to the instant memorandum opinion, Marvin L. Brown, both individually and in his official capacity as Warden (now-retired) of the Jail.[1] Plaintiff alleges that Mr. Gaither's death resulted from the Defendants' negligence as well as their deliberate and reckless indifference to conditions at the Jail that they knew were unconstitutionally dangerous. Plaintiff asserts three

---

[1] Plaintiff also named as Defendants Odie Washington, both individually and in his official capacity as Director (now-retired) of the D.C. Department of Corrections; Dennis Harrison, both individually and in his official capacity as Associate Warden of Operations of the Jail; Zerline Brooks, in her individual capacity; Gounod Toppin, in his individual capacity; and Joseph White, in his individual capacity. For purposes of this Memorandum Opinion, the Court shall refer to all named defendants in this action collectively as "Defendants."

causes of action against all Defendants, alleging a claim for violation of Mr. Gaither's constitutional rights pursuant to 42 U.S.C. § 1983, as well as claims for negligence/survival action and wrongful death.

This matter comes before the Court on Defendant Brown's [160] Motion to Vacate Default and for the Court to Accept his Motion for Summary Judgment as his Response to Plaintiff's Complaint. After thoroughly reviewing the parties' submissions, including the attachments thereto, applicable case law, and the record of the case as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART Defendant Brown's [160] Motion to Vacate Default and for the Court to Accept his Motion for Summary Judgment as His Response to Plaintiff's Complaint, for the reasons set forth below.

## I.  BACKGROUND

As explained above, Plaintiff brings this lawsuit as mother and personal representative of the Estate of Mikal R. Gaither, who was fatally stabbed by a fellow inmate on December 14, 2002, while incarcerated at the Jail. *See* Second Amended Complaint, Docket No. [34] (hereinafter, "Sec. Am. Compl.") ¶ 2. At the time of Mr. Gaither's death, Defendant Brown was the Warden for the Jail. *See id.* ¶ 12.

Plaintiff filed the original complaint in this matter on July 1, 2003. *See* Compl., Docket No. [1]. On October 6, 2003—before the Defendants' response to Plaintiff's complaint was due—the District moved, with Plaintiff's consent, for an order staying this civil case pending resolution of the criminal investigation into Mr. Gaither's death that was being conducted by the D.C. Metropolitan Police Department. *See* Consent Motion of Def. District of Columbia to Stay Pending Outcome of Criminal Case, Docket No. [7]. The Court granted the District's motion,

and the case was stayed, effective October 8, 2003, pending further notice from the parties. *See* 10/8/03 Min. Order. The stay was subsequently lifted at the parties' joint request on January 4, 2007, *see* 1/4/07 Min. Order, and Plaintiff filed her Second Amended Complaint shortly thereafter on February 9, 2007, *see* Sec. Am. Compl., Docket No. [34].

Plaintiff, via a process server, served Defendant Brown with the Second Amended Complaint on March 31, 2007, by personally serving his wife, Mary Ann Brown, with a copy of the Second Amended Complaint and Summons. *See* Affidavit of Service, Docket No. [44]. Plaintiff alleged claims against Defendant Brown in both his official and individual capacity. *See generally* Sec. Am. Compl. Defendant Brown, however, failed to timely answer or otherwise respond to the Second Amended Complaint. Plaintiff's counsel raised Defendant Brown's failure to respond with then-counsel for Defendants, Assistant Attorney General for the District of Columbia, George Rickman, in early May of 2007. *See* Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def., Docket No. [170], Att. 1 (Declaration of Richard L. Matheny, III) (hereinafter "Matheny Decl."), ¶ 2. Mr. Rickman responded that he "could not make any representation on behalf of Mr. Brown" at that time. *See* Ex. 2 to Matteny Decl. (5/1/07 E-mail from Matheny to Rickman). Based upon this representation and Defendant Brown's continuing failure to respond to the Second Amended Complaint, Plaintiff filed a Request to Enter Default of Marvin L. Brown on May 22, 2007. *See* Docket No. [48]. The Clerk of the Court entered default against Defendant Brown the next day, May 23, 2007. *See* Docket No. [60].

Defendant Brown explains that he did not become aware of Plaintiff's lawsuit until he met with Assistant Attorney General Rickman in August of 2007 to discuss the related civil action, *Beale v. D.C.*, Civil Act. No. 04-959, which was filed based upon the same pattern of

3

events that occurred at the D.C. Jail in December of 2002.  *See* Def.'s Reply in support of his Mot. to Vacate Def., Docket No. [174], Ex. 1 (Declaration of Marvin L. Brown) (hereinafter "Brown Decl."), ¶ 3.[2]  Defendant Brown had also been named as a defendant in the *Beale* action and had submitted a request for representation to the D.C. Office of Attorney General ("OAG") in that case.  *Id.*  He was meeting with Assistant Attorney General Rickman in August of 2007 to prepare for depositions in the *Beale* matter.  *Id.*  According to Defendant Brown, he was informed for the first time at that meeting that he had been named as a defendant by Plaintiff in the instant lawsuit.  *Id.*  Defendant Brown avers that, at the time service of the Summons and Second Amended Complaint was made to his wife in March of 2007, he and his wife were separated, and he was never advised by his wife that he had been served with the complaint in this action.  *Id.* ¶ 4.  Upon being informed of the instant lawsuit by Assistant Attorney General Rickman and after discussing the matter with him, it was Defendant Brown's understanding that he would be represented in this action by the OAG.  *Id.* ¶ 3.

The OAG, however, did not move to set aside the entry of default against Defendant Brown, despite its agreement in August of 2007 to represent him in this litigation.  Indeed,

---

[2] Plaintiff urges the Court to disregard Defendant Brown's declaration because it was filed for the first time with his Reply.  *See* Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def. at 4-5.  The Court, however, does not agree.  Although Defendant Brown would have been better served to have provided the declaration with his opening motion, the D.C. Circuit has made clear that, in ruling on a motion to set aside default, the Court must consider the facts in the light most favorable to the moving party.  *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) ("On a motion for relief from entry of a default . . ., all doubts are resolved in favor of the party seeking relief.").  Refusing to consider Defendant Brown's declaration is inconsistent with this admonishment.  In addition, Plaintiff's sole supporting citation on this point is inapposite, as the case relied upon by Plaintiff involves consideration of a discovery motion—not a motion to set aside default.  *See* Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def. at 4, n. 3 (citing *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16 (D.D.C. 2007)).  Accordingly, the Court shall consider Defendant Brown's declaration in ruling on the instant motion to vacate.

neither party took further action with respect to the entry of default, and the Court notes that Plaintiff has not to-date moved for default judgment against Defendant Brown. Rather, as the filings on the public docket in this case reflect, both parties appear to have proceeded as if Defendant Brown remained an active defendant in this action, despite the entry of default. When, on November 21, 2007, Assistant Attorney General Rickman withdrew as counsel of record for Defendants, substitute counsel of record entered their appearances on behalf of *all* Defendants—including Defendant Brown. *See* Praecipe of Withdrawal and Entry of Appearance, Docket No. [73]. From that point on, most—if not all—substantive filings submitted by Defendants (both during discovery and continuing after discovery had closed) purported to be made on Defendant Brown's behalf as well as on behalf of the other remaining defendants in this action. *See, e.g.,* Docket Nos. [89], [94], [98], [107], [117], [146], [157], [158]. No objection was ever raised by Plaintiff to these filings.

In fact, neither party raised this apparent inconsistency with the Court or otherwise addressed the entry of default against Defendant Brown until briefing on the parties' cross-motions for summary judgment was well under way. At that time, in opposing Defendants' motion for summary judgment—in which Defendant Brown purported, once again, to join—Plaintiff referenced the entry of default in a footnote, arguing that "Defendant Marvin Brown is not entitled to summary judgment . . . for the additional reason that the clerk has already entered default against [him]." Pl.'s Opp'n to Def.'s MSJ, Docket No. [155] at 18, n. 8. Plaintiff further advised that it was her intention to "move for default judgment against Mr. Brown pursuant to Rule 55(b)(2) at or near trial against the remaining co-defendants." *Id.*

Shortly thereafter, prompted by Plaintiff's footnote highlighting the previous entry of

default, Defendant Brown filed the instant motion to vacate the entry of default and accept the previously-filed motion for summary judgment as his response to the Second Amended Complaint. *See* Def.' Mot. to Vacate Def., Docket No. [160]. Plaintiff filed an opposition to Defendant Brown's motion, arguing that the default was willful and that Plaintiff would be prejudiced by a decision to set aside the entry of default. *See generally* Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def., Docket No. [170]. Plaintiff also argues in the alternative that, in the event the Court grants Defendant Brown's motion, the Court should allow Plaintiff to depose Defendant Brown and should award her monetary sanctions as well. *See id.* Defendant Brown filed a timely Reply. *See* Def.'s Reply in support of his Mot. to Vacate Def., Docket No. [174]. Accordingly, the motion is fully briefed and now ripe for the Court's review.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 55(c), a court "may set aside an entry of default for good cause." "Though the decision lies within the discretion of the trial court, exercise of that discretion entails consideration of whether (1) the default was willful, (2) a set-aside would prejudice the plaintiff, and (3) the alleged defense was meritorious." *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 373 (D.C. Cir. 1980). Although these are the same factors considered in determining whether to set aside a default judgment, the standard for setting aside an entry of default is a "lower standard" than is required when the court is asked to set aside a default judgment. *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980). Furthermore, the D.C. Circuit has made clear that "[d]efault judgments are not favored by modern courts," and that, "[g]iven the strong policies favoring the resolution of genuine disputes on their merits," a trial court's refusal to set aside an entry of default "'need not be glaring to

justify reversal.'" *Id.* at 835 (quoting *Keegel*, 627 F.2d at 374); *see also Int'l Painters and Allied Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.*, 288 F. Supp. 2d 22, 25 (D.D.C. 2003) ("Default judgments are generally disfavored by courts, because entering and enforcing judgments as a penalty for delays in filing is often contrary to the fair administration of justice."). Finally, the Court notes that, "[o]n a motion for relief from entry of a default . . ., all doubts are resolved in favor of the party seeking relief." *Jackson*, 636 F.2d at 836.

### III.  DISCUSSION

*A.     Defendant Brown's Motion to Vacate Entry of Default*

As explained above, Defendant Brown has moved to set aside the entry of default against him, arguing that good cause exists for vacating the default. Plaintiff has opposed Defendant Brown's motion. Plaintiff argues that, even assuming Defendant Brown has asserted meritorious defenses to this action as is required under the third prong of the test described above, prongs one (willfulness) and two (prejudice to plaintiff) nonetheless counsel against setting aside the entry of default. The Court shall examine the parties' arguments with respect to each of the three factors set forth by the D.C. Circuit in *Keegel* and *Jackson* below.

1.      Defendant Brown's Default Was Not Willful

"The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *H.W. Ellis Painting*, 288 F. Supp. 2d at 26 (citing *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 634 (2d Cir. 1998)). In considering whether a defendant's default is willful, the D.C. Circuit has consistently cautioned that it is improper to "impute the conduct of the attorney to his clients." *Jackson*, 636 F.2d at 837. "Default

judgments were not designed as a means of disciplining the bar at the expense of the litigants' day in court." *Id.* Accordingly, "on a motion to set aside a default or default judgment, 'courts have been reluctant to attribute to the parties the errors of their legal representatives.'" *Id.* (quoting *Barber v. Turberville*, 218 F.2d 34, 36 (D.C. Cir. 1954)).

Construing the facts in the light most favorable to Defendant Brown, the Court finds that Defendant Brown's default in this case was not willful. As explained above, Defendant Brown has averred that he was not aware either of the instant lawsuit (as his estranged wife accepted service but did not relay that information to him) or that default had been entered against him until his meeting with the OAG in August of 2007, when Assistant Attorney General Rickman advised him that he had been named as a defendant in the pending case.[3] Defendant Brown further explains that it was his belief, based on his conversation with Assistant Attorney General Rickman, that he would be actively represented by the OAG's office going forward. The Court notes that Defendant Brown had requested OAG's representation—and was actively represented by the OAG—in the related *Beale* civil action that was proceeding at that same time. The fact that Defendant Brown has previously sought OAG representation in similar circumstances further undermines any claim that Defendant Brown chose to willfully default in this lawsuit, particularly where, as here, he is being sued in both his official and *individual* capacities. It is readily

---

[3] Plaintiff notes in the Matheny Declaration that Assistant Attorney General Rickman advised Plaintiff that "he had tried to reach Mr. Brown on multiple occasions but that he was unable to contact Mr. Brown." Matheny Decl. ¶ 4. The Court emphasizes, however, that Defendant Brown left the District's employ in June of 2003, and, given that he was separated from his wife at the time service was made, it is reasonable to infer that he was not living at home with his estranged wife. *See* Brown Decl. ¶¶ 1, 4. Accordingly, the fact that Assistant Attorney General Rickman was unable to reach Defendant Brown does not create an inference of willfulness under these circumstances.

apparent, then, that Defendant Brown did not make a deliberate decision to default nor has he exhibited conduct that would fairly support a finding that his default in this action was willful.

Plaintiff contends that a finding of willfulness is nonetheless justified in this case in light of Defense counsel's "repeated failure . . . to respect the Court's procedures." Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def. at 6. Admittedly, counsel for Defendants failed to move in a timely fashion to vacate the entry of default against their client—waiting more than a year after obtaining permission to represent Defendant Brown to do so. This was quite clearly a serious error and not, as Defense counsel claims, a simple inadvertent mistake resulting from substitution of new counsel. Moreover, the Court notes that even now, having moved to set aside the entry of default, Defense counsel has failed to comply with the local rules of this Court, which require that a motion to vacate an entry of default "shall be accompanied by a verified answer presenting a defense sufficient to bar the claim in whole or in part." LCvR 7(g). In addition, as Plaintiff correctly observes, Defense counsel has also failed to comply with Local Civil Rule 7(m) in filing the motion to vacate. *See* Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def. at 3, n. 2. Pursuant to LCvR 7(m), counsel must confer with the opposing party "in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement." Counsel for Defendants, however, attempted to contact Plaintiff's counsel by e-mail only, and made no attempts to contact them in person or by telephone as is required, *see id.*—a point Defense counsel does not dispute, *see generally* Def.'s Reply in support of Mot. to Vacate Def.

Although the Court by no means minimizes Defense counsel's failure to comply with the local rules of this Court—and hereby places counsel on notice that such conduct shall not be

tolerated in the future—the D.C. Circuit has made clear that it is reversible error to hold a client liable for the errors of his counsel in evaluating a motion to set aside default. *See Jackson*, 636 F.2d at 837 (finding that the trial court "erred in thinking it proper to impute the conduct of the attorney to his clients in considering the motion to set aside the default judgment in the case at bar").[4] Despite the obvious deficiencies in Defense counsel's conduct, the facts viewed in the light most favorable to Defendant Brown do not support a finding that Defendant Brown himself willfully defaulted. Accordingly, the Court finds that this first factor weighs in favor of setting aside the entry of default.

### 2. Prejudice to Plaintiff is Minimal

The Court next turns to consider the prejudice to Plaintiff if the entry of default is vacated. "'[D]elay in and of itself does not constitute prejudice.'" *Capital Yacht Club v. Vessel AVIVA*, 228 F.RD. 389, 393 (D.D.C. 2005) (quoting *KPW & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 15 (1st Cir. 2003)). Accordingly, in evaluating the prejudice to a plaintiff in setting aside a default, a court should consider—not the mere fact of delay itself—but rather any effects such delay may have on the plaintiff (for example, loss of evidence or increased difficulties in

---

[4] Plaintiff's sole case citation in support of her assertion that willfulness may be found based on the conduct of Defense counsel (and not Defendant Brown himself) is to an unreported district court case from 1990. *See* Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def. at 8 (citing to *Cox v. D.C.*, Civ. Act. No. 90-1681, 1990 WL 209840, *4 (D.D.C. Dec. 4, 1990)). That decision is, quite obviously, not binding on this Court and indeed, may not be cited as precedent pursuant to Circuit Rule 32.1. Moreover, the case is inapposite to Defendant Brown's motion. The court in *Cox* recognized that the errors of counsel should not normally be imputed to the client, but found that the "case presents an exception to that general rule," because the "defendant is a public agency and defendant's counsel is a public employee;" based on this fact, the court determined that "[counsel's] scienter may be imputed to the defendant." 1990 WL 209840, at *3, 4. Defendant Brown is not, quite obviously, a public agency but rather an individual official, and Plaintiff's reliance on *Cox* is therefore misplaced.

obtaining discovery). *See H.W. Ellis Painting*, 288 F. Supp. 2d at 31.

Despite the entry of default against Defendant Brown, this case has continued to proceed apace. Indeed, for all intents and purposes, the parties have largely proceeded as if Defendant Brown remained an active defendant in this action. As explained above, Defense counsel entered an appearance on Defendant Brown's behalf in November of 2007, and has, since that time, consistently acted as counsel for Defendant Brown in this litigation. As reflected on the public docket, most—if not all—substantive filings submitted by Defendants (both during discovery and continuing after discovery had closed) have purportedly been made on behalf of *all* Defendants, including Defendant Brown. *See, e.g.,* Docket Nos. [89], [94], [98], [107], [117], [146], [157], [158]. Moreover, as Defendant Brown emphasizes, Plaintiff's claims against him are identical to the claims asserted against Defendant Washington and Defendant Harrison and are also predicated on the same core factual allegations that form the basis of all of Plaintiff's claims in this lawsuit.

Plaintiff nonetheless contends that she would be prejudiced by a decision vacating the entry of default. In support of this contention, Plaintiff makes two arguments. First, she claims that she "made various strategic and tactical decisions during discovery based on having secured a default against Mr. Brown." Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def. at 9. Plaintiff, however, does not actually specify what "strategic and tactical decisions" she claims to have made in reliance on the entry of default, and the Court is therefore unpersuaded by this assertion.

Second, Plaintiff contends that she would be "seriously prejudiced" by a decision setting aside the entry of default because "Plaintiff would then be deprived of her opportunity to take discovery from Mr. Brown." *Id.* According to Plaintiff, "[h]ad [she] been able to depose Mr. Brown, she may have learned facts that could have resulted in further discovery and depositions of

yet unknown witnesses." *Id.* Plaintiff's argument is thus clearly based upon a predicate assumption that Plaintiff was somehow prevented from taking discovery from Defendant Brown in this case. Plaintiff, however, has not shown as much. Admittedly discovery is now closed, but Plaintiff has not explained why she was allegedly prevented from deposing or otherwise taking discovery from Defendant Brown in this case during the actual discovery period. Plaintiff does not, for example, claim that she requested to take Defendant Brown's deposition, but that he refused to engage in discovery. To the contrary, given his previous participation in discovery in the related *Beale* matter, there is no reason to conclude that Defendant Brown would not have been as equally willing to participate in discovery in this matter if asked.[5]

Moreover, to the extent Plaintiff suggests that she chose not to take discovery from Defendant Brown in reliance on the entry of default, such suggestion carries little weight with the

---

[5] For this reason, Plaintiff's citation to *Sec. and Exch. Comm'n v. Alexander*, Civ. Act. No. 7290, 2004 WL 1468528, *6 (S.D.N.Y. Jun. 28, 2004) is inapposite. As an initial matter, the Court notes that this decision may not properly be cited as precedent pursuant to Circuit Rule 32.1. Even setting that aside, however, the decision does not support Plaintiff's position. In *Alexander*, the plaintiff had "proffered evidence that despite multiple requests, Defendant would not make himself available for a deposition until after the conclusion of the discovery period." *Id.* The court therefore concluded that the plaintiff would be prejudiced by a decision to set aside default given that the plaintiff "would be forced to devote even more time and energy to trying to secure discovery from [the defendant] after having already made extensive efforts to get [the defendant] to engage in discovery while the discovery period was open." *Id.*
    Plaintiff's reliance on *Constr. Interior Sys., Inc. v. Donohoe Co., Inc.*, 813 F. Supp. 29 (D.D.C. 1992) and *Honda Power Equip. Mfg., Inc. v. Woodhouse*, 219 F.R.D. 2 (D.D.C. 2003), is equally misplaced. The former decision does not actually involve a motion to set aside default, but rather a motion for reconsideration under Federal Rule of Civil Procedure 60. *See Constr. Interior Sys.*, 813 F. Supp. at 31. The latter case, although it does in fact implicate a motion to set aside a default judgment, is factually inappposite nonetheless. In *Honda Power*, the court denied a motion to set aside default judgment against defendants in part because the litigation had been stalled for more than two years pending efforts by defendants' attorney to contact defendants themselves. 219 F.R.D. at 5. Here, by contrast, litigation has proceeded apace, despite the entry of default.

Court. Although Plaintiff has not affirmatively represented that she declined to seek discovery from Defendant Brown based on the entry of default, her briefing, fairly read, appears to suggest as much. It is quite clear, however, that Plaintiff would have had an incentive to take discovery from Defendant Brown in this case *even if* he were no longer an active defendant in the pending litigation. As Warden of the Jail at the time of Mr. Gaither's death, Defendant Brown is undisputably a key witness to the many allegations underlying the instant lawsuit and would likely possess information essential to litigating the merits of Plaintiff's claims. This is particularly so given that, as part of her lawsuit, Plaintiff seeks to hold the District liable for the conduct of Defendant Brown and the other Jail officials pursuant to 42 U.S.C. § 1983. Thus, even assuming Plaintiff relied on the entry of default as to her claims against Defendant Brown, Defendant Brown's own conduct and knowledge nonetheless remained relevant to her claims against the District that are based, at least in part, upon Defendant Brown's conduct. It therefore makes little sense that she would decline to take discovery from Defendant Brown simply based upon the Clerk's entry of default.[6] Construing the facts most favorably to Defendant Brown, it is readily apparent that Plaintiff had both the opportunity and incentive to take discovery from Defendant Brown in this case, notwithstanding the entry of default against him—but that she declined to so in reliance on the discovery taken from Defendant Brown as part of the *Beale* litigation.

---

[6] In addition, given the multitude of filings—both during and after discovery—in which Defense counsel explicitly stated that the submissions were made on behalf of all Defendants, including Defendant Brown, Plaintiff's counsel should have been on notice that opposing counsel believed Defendant Brown was an active defendant in this action. Plaintiff, however, did not raise the issue with the Court or move for further protection through a motion for default judgment. Although the Court emphasizes that the failure to timely address the entry of default against Defendant Brown lies solely with Defense counsel, and not Plaintiff's counsel, this fact nonetheless casts doubt on the reasonableness of any reliance by Plaintiff on the entry of default in making decisions regarding discovery strategies.

Accordingly, the Court is unpersuaded that Plaintiff's failure to do so now requires the Court to deny Defendant Brown's motion to set aside the default.

However, even setting aside the question of why Plaintiff did not seek discovery from Defendant Brown, it is nonetheless apparent that the absence of discovery from Defendant Brown has not resulted in prejudice to Plaintiff at this stage in the litigation. In opposing Defendants' motion for summary judgment with respect to Defendant Brown, Plaintiff relied upon and cited to Defendant Brown's deposition testimony from the *Beale* matter in her opposition and made no claim that she was unable to adequately respond to Defendant Brown's allegations based upon a lack of discovery in this case. The Court therefore concludes that Plaintiff would not suffer significant prejudice if the entry of default against Defendant Brown is set aside.

### 3.     Defendant Brown Has Asserted a Meritorious Defense

Finally, the Court must consider whether Defendant Brown has asserted a meritorious defense. *Keegel*, 627 F.2d at 374. "Likelihood of success is not the measure." *Id.* Rather, the defendants' "allegations are meritorious if they contain 'even a hint of a suggestion,' which, if proven at trial, would constitute a complete defense." *Id.* As explained above, Plaintiff has not disputed that Defendant Brown has asserted a meritorious defense, *see generally* Pl.'s Opp'n to Def. Brown's Mot. to Vacate Def., and for good reason. As is apparent from Defendants' Motion for Summary Judgment, which Defendant Brown seeks to join, Defendant Brown has asserted several defenses that, if proven at trial, would constitute a complete defense. For example, Defendant Brown argues that he is entitled to qualified immunity, that claims against him in his official capacity must be dismissed as redundant, and that Plaintiff cannot show that he proximately caused Mr. Gaither's death or acted with deliberate indifference and/or reckless

disregard for Mr. Gaither's safety.  *See generally* Defs.' MSJ.  Accordingly, this final factor weighs in favor of vacating the entry of default.

In summary, then, the Court finds that each of the three factors outlined above counsel in favor of setting aside the entry of default in this case.  Accordingly, the Court, in exercising its discretion, shall GRANT Defendant Brown's motion, to the extent he seeks to have the entry of default vacated.  Defendant Brown, however, has also moved to have the Court accept the Defendants' Motion for Summary Judgment as his response to Plaintiff's Complaint.  In so moving, Defendant Brown has ignored his obligation under Local Civil Rule 7(g) to file "a verified answer presenting a defense sufficient to bar the claim in whole or in part" with his motion to vacate.  *See* LCvR 7(g).  Accordingly, the Court shall DENY Defendant's motion insofar as he seeks to have the Court accept his motion for summary judgment as his response to Plaintiff's complaint.  Although the Court shall permit Defendant Brown to join in the motion for summary judgment filed on his behalf, he must nonetheless file a verified answer to Plaintiff's Second Amended Complaint as required.  His answer is due on or before September 18, 2009.

B.   *Plaintiff's Request for Sanctions*

Plaintiff, in her opposition to Defendant Brown's motion, has requested that, in the event the Court grants Defendant Brown's request to set aside the entry of default against him, the Court should "allow Plaintiff to reopen discovery with respect to Marvin Brown" and should also "require Defendant Brown and/or his counsel to pay: (1) Plaintiff's attorney fees and process server expenses incurred to secure the original default in April and May 2007; (2) the attorneys fees and expenses incurred in preparing this submission (*i.e.*, Plaintiff's opposition); and (3) all costs reasonably related to taking discovery from Mr. Brown."  Pl.'s Opp'n to Def. Brown's Mot.

to Vacate Def. at 10, n. 15.

Although the Court, as explained above, is not persuaded that Plaintiff's initial failure to take discovery from Defendant Brown was in any way related to the entry of default, the Court nonetheless agrees that Plaintiff should be permitted to depose Defendant Brown in light of the Court's decision to set aside the entry of default.  Accordingly, the Court shall, in exercising its discretion, GRANT Plaintiff's request to reopen discovery, through and including October 30, 2009, for the limited purpose of allowing Plaintiff to depose Defendant Brown.  The Court further orders that the OAG—and not Defendant Brown personally—shall be responsible for the cost of the court reporter service.  With respect to the remainder of Plaintiff's requests for sanctions, however, the Court concludes that sanctions in the form of attorneys' fees and expenses are not appropriate.  Therefore, the Court, in exercising its discretion, shall DENY Plaintiff's remaining requests for monetary sanctions.

### III.  CONCLUSION

For the reasons set forth above, the Court hereby GRANTS-IN-PART and DENIES-IN-PART Defendant Brown's [160] Motion to Vacate Default and for the Court to Accept his Motion for Summary Judgment as His Response to Plaintiff's Complaint.  Specifically, the Court GRANTS Defendant Brown's motion insofar as it seeks to set aside the entry of default against him, but DENIES Defendant Brown's motion insofar as it seeks to have the Court accept his motion for summary judgment as his response to Plaintiff's Second Amended Complaint.  Although the Court shall permit Defendant Brown to join in the motion for summary judgment filed on his behalf, he must nonetheless file a verified answer to Plaintiff's Second Amended Complaint no later than **September 18, 2009**.  Finally, the Court hereby orders that discovery

shall be reopened, until and including **October 30, 2009**, for the limited purpose of permitting Plaintiff to depose Defendant Brown.  The OAG—not Defendant Brown personally—shall be responsible for the cost of the court reporter service.  Plaintiff's remaining requests for monetary sanctions are DENIED.

Date:   September 8, 2009

>        /s/
> COLLEEN KOLLAR-KOTELLY
> United States District Judge